IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

EMMA JANE PROSPERO,                        )
                                           )
            Plaintiff,                     )
                                           )
       vs.                                 )        CASE NO.
                                           )   2:20-CV-00110-LGW-BWC
DEPUTY RYAN SULLIVAN, All former           )
or current employees of the                )
Camden County Sheriff's Office             )
who are sued in their individual           )
capacities, LT. RUSSELL PRESCOTT,          )
All former or current employees            )
of the Camden County Sheriff's             )
Office who are sued in their               )
individual capacities, SHERIFF             )
JAMES PROCTOR, Current employees           )
of the Camden County Sheriff's             )
Office who are sued in their               )
individual capacities,                     )
                                           )
            Defendants.                    )

MOTIONS HEARING
BEFORE THE HONORABLE LISA GODBEY WOOD
September 8, 2021; 10:00 a.m.
Brunswick, Georgia

APPEARANCES:

For the Plaintiff:          CLARE NORINS, Esq.
                            University of Georgia School of Law
                            First Amendment Clinic
                            P. O. Box 388
                            Athens, Georgia   30603
                            (706) 227-5421
                            cnorins@uga.edu

For the Defendants:         BRADLEY J. WATKINS, Esq.
                            Brown, Readdick, Bumgartner, Carter
                              Strickland & Watkins
                            P. O. Box 220 (31521)
                            5 Glynn Avenue
                            Brunswick, Georgia   31520
                            (912) 264-8544
                            bwatkins@brbcsw.com

| | |
|---|---|
| Reported by: | Debbie Gilbert, RPR, CCR |
| | Official Court Reporter |
| | 801 Gloucester Street |
| | Post Office Box 1894 |
| | Brunswick, GA 31521-1894 |
| | (912) 262-2608 or (912) 266-6006 |
| | debra_gilbert@gas.uscourts.gov |

- - -

```
 1                    P R O C E E D I N G S
 2                 (Call to order at 10:05 a.m.)
 3          THE COURT:  Good morning.
 4          SPEAKERS:  Good morning.
 5          THE COURT:  Ms. Sharp, call the next case.
 6          THE CLERK:  Case 2:20-CV-110, Emma Jane Prospero versus
 7   Deputy Ryan Sullivan, Lieutenant Russell Prescott.  Clare Norins
 8   for the plaintiff; Bradley Watkins for the defendant.
 9          THE COURT:  Ready for the plaintiff?  And ready for the
10   Defense?
11          MR. WATKINS:  Yes, Your Honor.
12          THE COURT:  We do have two motions pending.  The first
13   was filed by the plaintiff, that being the second motion to
14   amend the complaint, and then we have the motion for a judgment
15   on the pleadings filed by the Defense, and I am going to take up
16   the motion to amend first because, depending on how that comes
17   out, it will affect whether the defense motion is mooted and
18   needs to be reurged at a different time.
19          I have, of course, read all of the briefs that have been
20   submitted with regard to both issues including the ones that
21   were filed very recently by each party.
22          That having been said, Ms. Norins, let me call on you to
23   proceed on behalf of your motion.  If you will come to the
24   podium, and, like I said, I have read all that's been submitted
25   in writing, but this is your opportunity to add anything you
```

1  would like with regard to your written product.

2  MS. NORINS: Thank you, Your Honor. Good morning, may

3  it please The Court, my name is Clare Norins, and I represent

4  the plaintiff, Mrs. Emma Jane Prospero, in this matter.

5  Plaintiff has shown good cause to amend her complaint to

6  add a deliberate indifference hiring claim against Sheriff

7  Proctor based on his decision to hire Deputy Ryan Sullivan,

8  notwithstanding his prior history of initiating unconstitutional

9  Fourth Amendment seizures. This is the same type of injury that

10  the plaintiff suffered here.

11  THE COURT: Let me stop you there and ask.

12  MS. NORINS: Sure.

13  THE COURT: Am I correct that I understand from your

14  briefing at this point although initially you had thought about

15  adding two defendants, now it would just be the sheriff; is that

16  correct?

17  MS. NORINS: That's correct. He is the ultimate hiring

18  authority for the sheriff's department.

19  THE COURT: And not Byerly?

20  MS. NORINS: Correct. So Sheriff Proctor knew from

21  Deputy Sullivan's employment application that he had been fired

22  from the Brunswick Police Department after less than two years

23  of employment here, but the sheriff failed to speak to any of

24  Sullivan's prior supervisors or to request his disciplinary

25  records.

1        Had the sheriff or his nominees done so, he would have
2   seen that among the 19 different infractions on Sullivan's
3   record there were five documented incidents of unconstitutional
4   Fourth Amendment seizures.  There was one warrantless arrest
5   without probable cause, one request for a warrant without
6   probable cause and at least four stops without articulable
7   suspicion, and this is all contained in Plaintiff's Exhibit F to
8   our motion.
9        Sullivan's disciplinary record further contained a
10  counseling memo from his supervisor stating that Sullivan had
11  been making borderline cases and cases that were clear
12  violations of people's rights.
13       That counseling memo went on to note that when
14  supervisors tried to instruct Sullivan on relevant Supreme Court
15  precedent about Fourth Amendment seizures, Sullivan's response
16  was "I disagree with that" and this is also contained in
17  Plaintiff's Exhibit F, and so we plead that this disciplinary
18  history, which is documented in Sullivan's Brunswick employment
19  file, would have put any reasonable hiring authority on notice
20  that Sullivan was highly likely to initiate Fourth Amendment
21  seizures without probable cause in the future.
22       THE COURT:  Is it your contention that Proctor acted
23  with malice or deliberate indifference?
24       MS. NORINS:  It is our contention that he acted with
25  deliberate indifference by not speaking to any of Sullivan's

1 prior supervisors or requesting his disciplinary file.

2 THE COURT: Amounting to a deliberate intent to injure?

3 MS. NORINS: Well, under a Section 1983 deliberate
4 indifference claim, you don't have the same malice requirement
5 that you would have under the state negligent hiring claim, so
6 the Supreme Court standard for a deliberate indifference in
7 hiring claim comes from Bryan County v. Brown. This 520 US 397,
8 and the Supreme Court there stated that a deliberate
9 indifference claim arises where a plaintiff can show that
10 adequate scrutiny -- that's their language -- of a defendant's
11 past employment history would have revealed prior constitutional
12 violations that would lead a reasonable hiring authority to
13 conclude that it was highly likely or an obvious consequence
14 that this defendant would again engage in that same kind of
15 constitutional violation in the future.

16 THE COURT: And that's my question. I was just
17 wondering which basket your allegations would go into, and while
18 you don't go so far as to allege a deliberate intent to injure,
19 you do allege a deliberate indifference.

20 MS. NORINS: Correct, Your Honor.

21 THE COURT: What about the Defense's argument that all
22 this would be futile?

23 MS. NORINS: Sure. So defendants are trying to convert
24 this into a summary judgment motion by submitting their
25 declarations and their evidence as to why what they did do they

1  believe was sufficient.

2  THE COURT: You mean in the way of the affidavit and the
3  call?

4  MS. NORINS: Right, and we would submit that it's
5  premature to reach the merits of whether what they did was
6  sufficient or not because we have established our prime fascia
7  pleading. We have made out all the elements of deliberate
8  indifference under Brown, and we should be allowed to go forward
9  and have discovery on that claim.

10  Then we can come back and Defendants can make their
11  arguments about what they did they believe to be sufficient. I
12  mean, we -- I can speak to why we think it wasn't sufficient but
13  I think we're premature to get to that.

14  THE COURT: What about with regard to statute of
15  limitations?

16  MS. NORINS: So the statute of limitations on this case
17  would start to run at the time that the charges were resolved in
18  Mrs. Prospero's favor.

19  THE COURT: So that was November.

20  MS. NORINS: That was November of 2019, so we are well
21  within the two-year period. Many of the cases that Defendant
22  cited to involved warrantless arrests where the statute does run
23  from the time of arrest, and that's not the case here because
24  Mrs. Prospero was arrested pursuant to legal process pursuant to
25  the warrant that Sullivan obtained, and we've cited to cases

1 both from the Supreme Court and the Eleventh Circuit that say
2 for a malicious prosecution case, which is what this is, the
3 statute runs from when the charges are resolved in the
4 plaintiff's favor.
5       THE COURT:  So looking at Rule 16, you would say you
6 have good cause because --
7       MS. NORINS:  Because why?
8       THE COURT:  -- they should have produced the information
9 and you couldn't have received or...
10       MS. NORINS:  So this late amendment arises out of
11 failures or out of Defendants' representation that they would
12 produce the disciplinary history for Sullivan.  We requested
13 that in our very first written discovery demands back in
14 December of 2020.
15       In January 2021, they said in their written responses
16 that they would be producing his personnel file, which they said
17 would contain his disciplinary history.
18       They never produced that file until after we filed our
19 current motion to amend but what they did do was submit
20 interrogatories, supplemental interrogatory responses, where
21 they disclosed that Sullivan had been dismissed from the
22 Brunswick Police Department, and that was the first we learned
23 that he had worked in Brunswick or been terminated, so the very
24 day we got those supplemental responses, we subpoenaed Brunswick
25 for his full file.  Took about two days to get that and

1 approximately three days later we moved to amend, so we were
2 very prompt and we've cited to case law that says we are allowed
3 to rely on Defendants' representation that they were going to
4 produce that to us and we weren't required to go out and try to
5 get it from third parties because they had told us that they
6 were going to turn it over.
7      THE COURT: If I were to grant this motion, then how far
8 would that set us back as far as going back and redoing
9 discovery and opening up further discovery? What is it that
10 Plaintiff would have in mind?
11      MS. NORINS: So we would want to try to locate and speak
12 to the supervisors who did make the decision to terminate
13 Sullivan from Brunswick and who did discipline him for prior
14 incidents.
15      You know, the termination was really the culmination of
16 the progressive disciplinary policy. There were multiple
17 infractions and lesser disciplines before the termination, so we
18 would want to, you know, speak to the people that actually
19 directly supervised him and had disciplined him, find out what
20 they have to say. We would need to recall Sheriff Proctor and
21 Captain -- or I believe he's now Major Byerly because it --
22      THE COURT: For the limited purpose of --
23      MS. NORINS: For the limited purpose of exploring this
24 hiring issue. I'm not saying that's all we would need to do,
25 but that's what comes to mind going into it that we would want

1  to discover.
2          THE COURT: All right, Ms. Norins, thank you. Let me
3  turn across the aisle and hear from Mr. Watkins.
4          MS. NORINS: Okay.
5          THE COURT: And then I will turn back to you in brief
6  reply on this motion.
7          MS. NORINS: I appreciate it.
8          THE COURT: Yes, thank you. All right, Mr. Watkins.
9          MR. WATKINS: Thank you, Judge.
10         I know, it sounds like you're well familiar with the
11 issues we are talking about in terms of potentially adding this
12 claim.
13         Our defenses are two-fold. One, there is no anchoring
14 claim. We will determine that when we argue the motion for
15 judgment on the pleadings, which there needs to be for this
16 claim to be added, and Number 2, we claim that this claim would
17 be futile if added.
18         The Court asked about our statute of limitation defense
19 that was raised in our motion, and we think the plaintiff is
20 correct in that the two-year runs from the date of resolution of
21 the criminal charge.
22         I will say that initially The Court will recall that the
23 plaintiffs asked to conduct discovery before the suit was
24 answered --
25         THE COURT: Partially granted.

1  MR. WATKINS: -- based on the fact that they claimed the
2  statute was about to run on the timetable we alleged in our
3  brief because, keep in mind, the plaintiffs pled this also as a
4  false arrest claim.
5      It is a malicious prosecution claim because it was
6  undertaken pursuant to a warrant, but to the extent we were
7  mistaken about the statute of limitation, based on the breadth
8  of claims asserted, the plaintiffs took that same position when
9  suit was filed, but for purposes of today, we're arguing about
10 whether there is an anchoring claim and whether asserting that
11 claim would be futile.
12     I think the plaintiff stated the accurate standard,
13 which is a very tough standard to meet.  Again it's whether
14 there is evidence that the sheriff was deliberately indifferent
15 to a, quote, highly predictable consequence that hiring Sullivan
16 would result in the deprivation -- and this is the important
17 part -- of the particular constitutional rights violation
18 alleged in this case, and what's alleged in this case is not
19 what was referenced in the Brunswick personnel file, which is
20 that he was insubordinate, that he had multiple policy
21 violations, that he didn't report to work or even that he was
22 making questionable consensual and counter stops without
23 articulable reasonable suspicion.
24     This isn't a stop case.  This is a case where they
25 allege that Sullivan misrepresented facts in an affidavit, that

1  he alleged misstatements, false statements in an affidavit, and
2  that he omitted things in that affidavit, and so what we did in
3  our brief is we rely on a case that's really remarkably similar
4  that involves a warrant application complaint against an
5  officer.  That case is Perrin v. The City of Elberton.  It's a
6  Middle District of Georgia 2005 case, 2005 Westlaw 1563530.
7        In that case, the officer was alleged to have used an
8  unsworn warrant application, and there was plenty in this
9  officer's background.  He also had been terminated like the
10 officer in this case.
11       In his background, there were complaints of -- he had
12 been terminated from another police force.  There were
13 complaints of him using excessive force, of being involved in a
14 police chase in which two minors and an adult were killed and
15 various other issues, and what The Court said is that there was
16 nothing in this officer's background that would establish that
17 deliberate indifferent standard that it was highly likely and
18 probable that he would commit the particular offense alleged in
19 this case.
20       And I will submit that there is -- and we cite other
21 cases we think is similar as well, but I will submit that it is
22 not clearly established -- of course, we would raise a qualified
23 immunity case -- that a sheriff's department must talk to an
24 applicant's former employer or, as they suggest, send an open
25 records request for a personnel file.

1    It's just not in the case law, and so they would have to
2 show that it's clearly established, in order for this claim not
3 to be futile, that that's the standard.
4    What we do know they did -- and I think not just the
5 affidavits we submitted, whether The Court considers them or
6 not, they are not made pursuant to our motion to dismiss.
7    They are made pursuant to their motion to add, but
8 regardless, I believe they've put in the record information
9 about the POST certification records and what these POST
10 certification records suggest is that he was eligible to be
11 hired.
12    They had investigated. They determined that there was
13 no further action necessary to be taken, and they indicated he
14 was eligible and certified to be hired as a law enforcement
15 officer, and so what The Court would have to decide is that's
16 not enough. A police department can't say, "Well, I've checked
17 the POST records; he's eligible to be hired; he's certified to
18 be hired." Now you've got to go to this extra step because it's
19 clearly established. You need to make phone calls and send open
20 records requests. It's just not the standard.
21    So this claim is futile. They didn't make it as a state
22 law claim, which I initially thought they did. That obviously
23 would have its own problems with there not being malice and
24 official immunity, but our position is this claim can't survive
25 and we ask The Court not to allow it to go forward because I can

1  tell The Court the breadth of discovery in this case has already
2  been pretty enormous, and if this claim is added, which we think
3  would be eventually futile and subject to a motion to dismiss or
4  a motion for summary judgment, the amount of discovery that
5  would be undertaken on this claim would be immense, and so we
6  ask The Court to deny their motion to add this claim.
7            THE COURT:  All right, thank you, Mr. Watkins.
8            Briefly in reply, Ms. Norins.
9            MS. NORINS:  Yes.
10           So a couple of points, Your Honor.  First of all,
11 Defendants claim that we have to show it was clearly established
12 that the sheriff would have to speak to prior supervisors and
13 request a personnel file, and we believe that is clearly
14 established under Brown.  This is a Supreme Court standard.
15           It says, "To test the link between the hiring decision
16 and plaintiff's injury, we must ask whether a full review of the
17 defendant's record would have put the hiring authority on notice
18 that the defendant was likely to commit the same type of
19 constitutional violation again," and that's Brown at 520 US at
20 412 to 413, so it's talking about the full record, which would
21 include speaking to supervisors or requesting the file.
22           Then we have the Eleventh Circuit's decision in Griffin
23 v. City of Opelika, 261 F3rd 1295 from 2001, which upheld a
24 deliberate indifference claim where the current employer was
25 aware of past misconduct by the defendant but failed to speak to

1  the defendant's prior employer and failed to request the
2  defendant's employment file and therefore failed to uncover a
3  history of prior bad acts of the same type or genre as the
4  current bad act, so we believe that the City of Opelika
5  establishes that there was this clear duty to do more than just
6  check the POST records but to also look at the full record of
7  Sullivan's employment with Brunswick.
8      They also make this point that he had never, while at
9  Brunswick -- I'm talking about Sullivan -- had never been
10 alleged to falsify a warrant application.
11     We actually don't know that yet because we haven't had
12 discovery of what occurred with the one warrant that he did try
13 to request without probable cause.
14     We also are not required to show with such particularity
15 that he engaged in exactly the same kind of misconduct.  The
16 cases, and particularly Brown, speak to it has to be the same
17 type of constitutional violation, so, for instance, prior
18 incidents of excessive force that Sullivan had maybe engaged in
19 at Brunswick would not help us.
20     THE COURT:  One time a TASER, one time a gun.
21     MS. NORINS:  Right.
22     THE COURT:  That would help but not in an arrest type --
23     MS. NORINS:  Not in our case because we don't have an
24 excessive force claim, but the incidents that we point to in his
25 past all involve unconstitutional Fourth Amendment seizures.

1  They are all the same type or genre of constitutional violation,
2  and that's all that the law requires us to show.  We don't have
3  to show a prior case on all fours with our case.
4          And then defendants also pointed to a case, City of
5  Elberton, Perrin versus City of Elberton, and there the issue
6  was exactly what we were just talking about, that the history
7  really didn't relate to the current injury.
8          There the plaintiff had accused the defendant officer of
9  violating his federal rights by applying for a warrant using an
10 unsworn affidavit, and the prior history and the disciplinary
11 records show that he had excessive force complaints and maybe
12 some other types of complaints but nothing relating to any kind
13 of unlawful Fourth Amendment seizure, and so there the history
14 and the current injury simply were not related, and that is not
15 the situation in our case.
16         THE COURT:  Thank you, Ms. Norins.
17         MS. NORINS:  Thank you.
18         THE COURT:  Counsel, here is how we will proceed.  As to
19 Docket Entry 22 -- that is the second motion to amend the
20 complaint by the plaintiff -- I am going to grant that motion
21 and find under Rule 16(b)(4) good cause for the amendment.
22         However, I am going to impose a timeline for any
23 additional discovery that addresses that amendment.
24         I understand that it -- the added complaint will be
25 against just one defendant and I will permit the parties an

```
 1   additional 90 days to conduct and complete any discovery
 2   regarding that amendment, and if there's any discovery disputes
 3   that arise, rather than get us off track, the magistrate judge
 4   is going to be able to even handle things on the phone if
 5   necessary so we can go ahead and get to the bottom of the case.
 6            MS. NORINS:  Sure.
 7            THE COURT:  In granting the motion at Docket 22, I find
 8   then that the motion at Docket 23, the motion for judgment on
 9   the pleadings of the complaint, as it now stands, is mooted and
10   the defendant will not in any way or the defendants will not in
11   any way be penalized from reasserting those arguments along with
12   any other that come up based on the amended complaint at the
13   time in the future.
14            MS. NORINS:  Thank you, Your Honor.  Could I ask when
15   the 90 days will start to run because we were in the middle of
16   discovery and it was stayed?
17            THE COURT:  How many days do you have left?  When does
18   discovery end?
19            MS. NORINS:  It was -- I feel like we were about
20   halfway -- we had just gotten an extension when it was stayed.
21            THE COURT:  My intention is for that to run concurrent
22   with whatever is still in place and if you have time left over
23   beyond --
24            MS. NORINS:  Could we perhaps, taking that 90 days into
25   account, submit a schedule?
```

1      THE COURT: For example, what I mean is if you have a
2 hundred days of discovery left, then just run those a hundred.
3 If you have 60 days, this gives you 30 additional, do you
4 understand?
5      MS. NORINS: Okay, got it. Thank you.
6      THE COURT: And go ahead and file on the docket, even
7 though you have a proposed, go ahead and file your second
8 amended complaint on the docket within three days.
9      MS. NORINS: Okay.
10      THE COURT: All right, counsel, anything else we can
11 cover at this point while everyone is here together? Mr.
12 Watkins, anything else on behalf of the Defense?
13      MR. WATKINS: No, and just for my edification, to be
14 clear, the disposition of the motion for judgment on the
15 pleadings is disposed of as moot at this point pending --
16      THE COURT: Correct, and you reurge it and you can
17 modify it in the future once you see that complaint that is
18 filed.
19      MR. WATKINS: In other words, there's not going to be
20 any prohibition against me asserting those same legal defenses
21 once that amended complaint is --
22      THE COURT: That's exactly right. That's exactly right.
23 All right. On behalf of the plaintiff, anything further that we
24 can resolve with everyone here this morning?
25      MS. NORINS: No, Your Honor, thank you.

1  THE COURT: All right, counsel, we will be in recess.
2  (Proceeding concluded at 10:29 a.m.)
3  CERTIFICATION
4
5  I certify that the foregoing is a true and correct
6  transcript of the stenographic record of the above-mentioned
7  matter.
8
9  *Debra D Gilbert* (signature)

11  _____    09/26/2021
12  Debra Gilbert, Court Reporter       Date