UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| EMMA JANE PROSPERO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 2:20-cv-110 |
| | * | |
| DEPUTY RYAN SULLIVAN; LT. | * | |
| LT. RUSSELL PRESCOTT; and | * | |
| SHERIFF JAMES PROCTOR, | * | |
| sued in their individual capacities, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

COME NOW Deputy Ryan Sullivan, Lt. Russell Prescott and Sheriff James Proctor and, pursuant to Fed. R. Civ. P. 12(b)(6), file this reply brief in support of their motion to dismiss and move this Court for an Order dismissing all claims asserted in Plaintiff's Second Amended Complaint (*Dkt. No. 53*), for the following reasons:

I.   ***Plaintiff's attempts to re-brand her calls to 9-1-1 as expressing "safety concerns" is not a reasonable inference and a reasonable officer could have concluded that Plaintiff's calls with 9-1-1 concerned a non-emergency matter.***

Plaintiff understands that three calls to 9-1-1 in a 16-minute period for what was described and interpreted as a noise complaint is problematic for her position that no reasonable officer could have construed Plaintiff's conduct as interfering with or disrupting an emergency telephone service. Thus, Plaintiff endeavors to re-characterize her complaints as expressing safety concerns that were ignored by the officers. Plaintiff urges that this Court make all

1

reasonable inferences in her favor, but the correct standard for evaluating whether Defendants are entitled to qualified immunity is whether no reasonable officer could have concluded that arguable probable cause existed to believe that Plaintiff committed the misdemeanor offense of interfering with or disrupting 9-1-1.

After amending her complaint, Plaintiff now claims that the shooting noise she reported caused her to fear for her safety. That concern was never expressly made to the 9-1-1 dispatch operators and, importantly, there is no allegation in the pleadings that such a concern was ever relayed to the Defendants Prescott or Sullivan. It cannot be said that no reasonable officer under the same circumstances would have concluded that Plaintiff was making multiple non-emergency calls to 9-1-1 regarding a noise complaint. Actually, such an interpretation is consistent with what is pled in Plaintiff's Second Amended Complaint. Plaintiff pleads that "[t]he Prosperos also reasonably believed that the loud, persistent gunshots violated local noise ordinances." *Dkt. No.* 53, ¶ 23. Plaintiff specifically points to the Woodbine noise ordinance which Plaintiff implies was violated by the shooting noise. *Id.* at ¶ 24. Plaintiff also cites the Camden County nuisance ordinance that prohibits "sounds . . . that interfere with the peace or comfort or disturb the quiet of the community." *Id.* at ¶ 25.

In an effort to now portray her concerns as being related to safety issues, Plaintiff notes that in the first call with 9-1-1 she claimed that the shooting was "too close to neighborhoods here." *Id.* at ¶ 32; *Dkt. No.* 54-2. That statement does not convey that the complaint is one of a safety nature as opposed to a noise issue. In fact, Plaintiff had just stated, "You can *hear* all the shots in the background." *Dkt. No.* 54-2. (emphasis supplied). In addition, Plaintiff states, "I'm trying to enjoy my Thanksgiving." *Id.* A reasonable officer relayed this information could

2

certainly interpret the call to be about a non-emergency situation.  After all, Plaintiff pleads that she had initially called the non-emergency line, which a reasonable officer could certainly assume reflected that the call was not being made about an emergency safety issue. *See Dkt. No.* 53, ¶ 30.

As to the second call, it again was placed to the non-emergency number which would certainly inform a dispatcher and a reasonable officer that the call was not concerning an emergency safety issue. At no time during the second call was any explicit safety fear mentioned to the dispatch officer.  The dispatch officer clearly did not interpret the call as relaying a fear of personal safety. He tells the Prosperos that the officers are aware of the shooting and that it is occurring on private property. *Dkt. No.* 54-4.  He signs off the call stating, "you try and enjoy the rest of your day." *Id.* This is not the type of farewell expressed to a caller who is believed to be reporting a threatening safety concern.

As to the third call, while Plaintiff does state that the shooting "is coming too close to the neighborhood," she does so in the context of complaining about the noise.  In fact, immediately after making this statement, Plaintiff states to dispatcher Archibald: "because of the noise ordinances, they're not supposed to have [shooting]. . . " *Dkt. No.* 54-6. Plaintiff argues that "they" need to stop the shooting, and that "they" have always stopped it in the past. *Id.* Plaintiff actually questions, "Why is this different today?" *Id.* If Plaintiff were relaying threatening safety concerns, it would certainly be unusual to talk about noise ordinances as to prior incidents of shooting, without ever specifically mentioning any fear for safety or bodily injury. After dispatcher Archibald is forced to have his supervisor, Sgt. Flowers, take over the call due to Plaintiff's argumentative attitude, Plaintiff again – for the second time – references a noise

ordinance.

| | |
|---|---|
| Flowers: | ". . . They are well within their rights to shoot on that property." |
| Plaintiff: | "Actually, that's not what we've been told because of the noise ordinance. That's what zoning (unintelligible) and things have told us. |

*Id.* Plaintiff ends the call stating that it's Thanksgiving and she doesn't want anyone at her house.

*Id.* This does not sound like a person who is reporting a concern for her physical safety.

Despite Plaintiff's best efforts to re-brand the nature of her calls with 9-1-1, it is simply not a reasonable inference to conclude that Plaintiff was complaining of safety issues to 9-1-1. *Most importantly, Plaintiff does not plead that the dispatch operators informed Defendants Prescott or Sullivan that Plaintiff was reporting safety concerns and that the deputies ignored that information.* In other words, there is no support in the pleadings for the theory that Defendants Prescott and Sullivan Plaintiff disregarded any known safety concern expressed by Plaintiff.  Plaintiff does plead that the dispatch operators had multiple phone calls with Defendants Prescott and Sullivan about Plaintiff's calls, presumably relaying the content of the calls reflected in the transcripts, quoted in the complaint and cited in the arrest warrant affidavit. *Dkt. No. 53*, ¶¶ 73-80. During those calls, Defendant Sullivan was informed that two of the calls came through to the non-emergency line, further suggesting that Plaintiff was not complaining about an emergency situation. *Id.* at ¶ 76. In sum, it cannot be said that no reasonable officer could conclude that Plaintiff's calls with 9-1-1 concerned a non-emergency situation.

**II.      The dispatch operator's statement to Defendant Sullivan that Plaintiff "was just not a happy camper and she wanted it all – to get it taken care of" does not undermine the fact that a reasonable officer could conclude that Plaintiff interfered with or disrupted 9-1-1.**

Plaintiff argues that the above statement from the dispatch operator to Defendant Sullivan proves that Plaintiff did not intend to disrupt or interfere with 9-1-1 when she had three calls with 9-1-1 in a 16-minute period about her complaints of shooting noise. Based on this one statement, Plaintiff urges that "no reasonable officer could have believed, even mistakenly, that Plaintiff's purpose for calling was anything other than to get the shooting stopped." *Dkt. No. 57*, at 8. Plaintiff is attempting to create a false dichotomy, which is the notion that if Plaintiff wanted the shooting noise stopped, she could not have interfered with or disrupted 9-1-1. Certainly, a person can call 9-1-1 for what is subjectively believed to be a legitimate reason, not get the desired response or reaction, and engage in conduct that is disruptive to 9-1-1 operations. That is precisely what occurred here. Plaintiff – who was described as "not a happy camper" – was clearly dissatisfied with the response she was receiving to her complaint, so she repeatedly called back to the same dispatch operator, argued with him, refused assistance from deputies, and threatened to call the Governor and TV stations if she didn't get her way. She further belittled the Sgt. Flowers, the supervisor who was forced to take over the call: "Do you understand, Officer Flowers, like the petal?" It is not disputed that Plaintiff's ultimate goal was to get the shooting noise stopped. It is equally true that a reasonable officer could have concluded that she intended to get her way by engaging in conduct that interfered with and disrupted a 9-1-1 service. The squeaky wheel gets the grease is an old but true axiom. The most voiced (or loudest) complaints

are the ones most likely to get attention. Plaintiff intended to get the shooting noise to stop –
despite being told it was lawful and despite refusing to speak with a deputy about her complaint –
and her method to accomplish this end was what was disruptive to 9-1-1.

It is important to note that this Court should not attempt to decide whether arguable
probable cause existed for a reasonable officer to conclude that Plaintiff's *intent or purpose* was
to interfere with or disrupt 9-1-1.  Defendants Prescott and Sullivan concluded just that, as did
the magistrate judge. However, the issue of Plaintiff's intent or purpose is immaterial because the
intent element of a criminal statute is not required to be satisfied in order to establish probable
cause. *See Shortz v. City of Montgomery*, 267 F. Supp. 2d 1124, 1129 (M.D. Ala. 2003); *In re
Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277, 1285–86 (S.D. Fla. 2011);
*Brimage-Nesmith v. Bay Credit Union*, No. 5:17CV104-RH/GRJ, 2017 WL 3567975, at *1
(N.D. Fla. Aug. 17, 2017).  For qualified immunity to apply, it must only be established that
Plaintiff's conduct could have been interpreted by an officer as interfering with or disrupting a 9-
1-1 service. Plaintiff concedes this point in her brief, despite continuing to assert conflicting
arguments to the contrary. *See Dkt. No. 57*, at 14.

***III.    Plaintiff's qualified immunity analysis is flawed because it is (1) premised on highly
generalized principles of law and (2) is only limited to an evaluation of alleged
omissions/misstatements in the arrest warrant affidavit, as opposed to whether
arguable probable cause existed to arrest Plaintiff notwithstanding the arrest warrant.***

In terms of qualified immunity, "[a]lthough a plaintiff does not have to show that the
precise conduct in question has been held unlawful, for a federal right to be clearly established,
its parameters must be sufficiently clear that a reasonable official would understand that what he

6

is doing violates that right." *Brinkley v. Waters*, No. 2:18-CV-89, 2021 WL 1233352, at *11 (S.D. Ga. Mar. 31, 2021)(internal citations and punctuation omitted). "[T]he Supreme Court has repeatedly instructed courts 'not to define clearly established law at a high level of generality.' The inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Schantz v. DeLoach*, No. CV 2:17-157, 2020 WL 564568, at *5 (S.D. Ga. Feb. 4, 2020)(internal citations omitted). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017)(internal citations omitted). "Unless a government agent's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent officer or one who has knowingly violated the law would have done such a thing, the government actor has immunity from suit." *Schantz v. DeLoach*, No. CV 2:17-157, 2020 WL 564568, at *4 (S.D. Ga. Feb. 4, 2020). "Such specificity is especially important in the Fourth Amendment context, where the Supreme Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." *Norris v. Hicks*, No. 20-11460, 2021 WL 1783114, at *5 (11th Cir. May 5, 2021). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Poulakis v. Rogers, 341* F. App'x 523, 528 (11th Cir. 2009).

Here, Plaintiff argues that she "need not point to a case factually on all fours regarding the particular misrepresentations and omissions made be Sullivan given the clear applicability of the general rule against falsified warrant applications." *Dkt. No. 57*, at 12. Plaintiff misconstrues her burden. Plaintiff's First and Fourth Amendment claims are barred if Plaintiff's misdemeanor

arrest for a violation of O.C.G.A. § 16-11-39.2 would have been justified notwithstanding the warrant-application process. *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020)(citing *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)). Plaintiff's burden to prove "a violation of her Fourth Amendment right to be free of unreasonable seizures" includes not only showing that the legal process justifying her seizure was constitutionally infirm, but also a showing that her seizure "would not otherwise be justified without legal process." *See Williams*, 965 F.3d at 1165 (*citing Paez*, 915 F.3d at 1285). Thus, even if this Court were to determine that any of the challenged statements in the Affidavit were false, intentionally made, and material – which is denied – Plaintiff could still "prevail only if [her] seizure would not have been constitutional without legal process." *Id.* As explained previously, even absent the affidavit and resulting arrest warrant, Defendant Sullivan could have charged Plaintiff on the day of the incident with a misdemeanor violation of O.C.G.A. § 16-11-39.2. Plaintiff has pointed to no binding case law that would have informed Defendants Prescott and Sullivan that Plaintiff's conduct did not justify the misdemeanor charge against her.

In evaluating qualified immunity, this "court cannot consider just any case law to decide if a right was clearly established. Only binding opinions from, the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed, can serve as precedent, for this analysis." *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1369–70 (S.D. Ga. 2015); *Corbitt v. Vickers,* 929 F.3d 1304, 1319 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 110, 207 L. Ed. 2d 1051 (2020)("[O]nly binding precedent can clearly establish a right for qualified immunity purposes."); *Norris v. Hicks*, 2021 WL 1783114, at *5 (11th Cir. May 5, 2021)(unpublished Eleventh Circuit opinion is not clearly established law). Plaintiff has failed to

point to any binding opinion from the United States Supreme Court, the Eleventh Circuit or the Georgia Supreme Court that would have informed Defendants Prescott and Sullivan that Plaintiff could not be arrested for the misdemeanor offense of interfering with or disrupting an emergency telephone service.

IV.    ***The newly raised allegations of false, intentional and material misstatements in the arrest warrant affidavit should not be considered by this Court and, moreover, lack any merit.***

As to the qualified immunity in the context of the arrest-warrant affidavit, Defendants would also be entitled to qualified immunity if the alleged misstatements or omissions in the affidavit were not deemed to be false, intentional, and material. *Paez*, 915 F.3d at 1276.  This issue is discussed in depth in Defendant's Motion to Dismiss and Defendants will not repeat those same arguments here. *See Dkt. No. 54*, at 11-17.  On this topic, however, Plaintiff's brief attempts to point to allegations of misstatements or omissions that are *not* included in her Second Amended Complaint. This Court should not entertain Plaintiff's latest attempt at another *ad hoc* amendment of her Complaint.

For instance, Plaintiff claims that Defendant Sullivan failed to include in his affidavit the dispatch operator's statement that Plaintiff "was just not a happy camper and she wanted it all – to get it taken care of." *Dkt. No. 57*, at 14.  Plaintiff's Second Amended Complaint does not plead that this was a material omission in the arrest warrant affidavit. *See Dkt. No. 53*, ¶¶ 82-93. Even if this allegation were included in the Second Amended Complaint, this can hardly be viewed as an intentional omission given the fact that the affidavit repeatedly relays that Plaintiff called regarding the shooting. It is readily apparent from the affidavit that Plaintiff wanted the

9

shooting to stop, regardless of whether this quote was used in the affidavit. The affidavit certainly did not imply that Plaintiff did not want the shooting to stop. Moreover, this statement is clearly immaterial to a finding of probable cause.  Again, the issue of Plaintiff's *intent* is completely irrelevant because the intent element of a criminal statute is not required to be satisfied in order to establish probable cause. *See Shortz*, 267 F. Supp. 2d at 1129; *In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d at 1285–86. Also, the allegation is not material because the inclusion of yet another statement in the affidavit that Plaintiff wanted the shooting noise to stop does not change the probable cause analysis.

Plaintiff also argues that the affidavit did not include information that the Prosperos made statements that the shooting was "too close to neighborhoods here." *Dkt. No. 57*, at 14. Plaintiff again failed to plead that this was an intentional and material omission in the affidavit. Plaintiff's complaints about the veracity and completeness of the affidavit are found in paragraphs 82-93 of the Second Amended Complaint. There is no mention of this statement, nor any allegation that its omission was intentional and material. *See Dkt. No. 53*, ¶¶ 82-93. Even if this Court were to consider this statement in evaluating the truthfulness of the affidavit, the probable cause determination would not be different. First, there is no allegation that Defendants Prescott or Sullivan were told about this statement, so there can be no intentionality in not including it in the affidavit. In addition, the full context of the three calls suggests Plaintiff's concern was with noise, not with safety.  There is no explicit mention of safety concerns in any of the calls, which instead involve references to noise ordinances and attempting to enjoy Thanksgiving. Second, including a statement that Plaintiff complained that the shooting noise was too close to her neighborhood – given that Plaintiff was repeatedly told the shooting was lawful – would not have

altered the probable cause determination.

Plaintiff further argues that the affidavit was misleading because it characterized Plaintiff as being uncooperative during her initial call. Like the other allegations discussed above, there is no mention in the Second Amended Complaint that the affidavit was false or misleading for this reason. Plaintiff cites to paragraphs 90 and 91 of the Second Amended Complaint when discussing this issue, but neither paragraph concerns any statement in the affidavit about Plaintiff being uncooperative in the first call. Plaintiff is again attempting to amend her complaint without leave of court to make these arguments. Even if these allegations were included in the Second Amended Complaint as a reason the affidavit was faulty and not supportive of probable cause, the result would be the same. As to the intentionality factor, it is not alleged that Defendants Prescott or Sullivan were told something different by the dispatch operators. Actually, a review of the calls supports this potential interpretation. As to the materiality factor, removing this statement does not negate that (arguable) probable cause existed for the charge given the substantial additional information contained in the affidavit.

V.    *A jury issue is not presented because "Defendant Sullivan expressed animus toward [Plaintiff]."*

Plaintiff argues that given Defendant Sullivan's disparaging comments about Plaintiff after he was called a second time about the shooting noise, "a finder of fact could readily conclude that Sullivan disliked and wanted to punish Plaintiff for her protected speech and petition activity in reporting gunshots and asking that they be stopped." *Dkt. No. 57*, at 18. This is not the case because the law is clear that Defendant Sullivan's subjective intentions or beliefs are absolutely immaterial to a probable cause determination.

11

As the Eleventh Circuit explained in *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010):

> The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs. Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern.

Indeed, the essence of the qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation; the standard is an objective one, and therefore does not include inquiry into an official's subjective intent or beliefs, and, in fact, an official's subjective beliefs about the matter, however induced, are actually irrelevant to the inquiry. *Rushing v. Parker*, 599 F.3d 1263 (11th Cir. 2010). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982) (discarding the subjective component of the qualified immunity inquiry and adopting the "objective reasonableness" standard); *Jackson v. Sauls*, 206 F.3d 1156, 1165 ("[T]he standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs.").

Accordingly, contrary to Plaintiff's urging, it is most definitely not for the jury to determine whether "Sullivan disliked and wanted to punish Plaintiff" or whether "animus led Sullivan" to seek the arrest warrant. *See Dkt. No. 57*, at 18. Rather, it is for this Court to apply an *objective-reasonableness* standard in evaluating the qualified immunity defenses raised in this motion.

**VI.    *Plaintiff is incorrect in asserting that, because this Court granted her leave to add her federal negligent hiring/retention claim, this Court has already determined that such claim is strong enough to survive a motion to dismiss.***

Plaintiff argues that because a district court *may* deny leave to amend a complaint if it concludes that the proposed amendment would be futile, and because this Court did not deny her motion for leave to amend her complaint, then this Court *must* have concluded that the proposed amendment was not futile. Plaintiff states it this way: "when this court [sic] granted Plaintiff leave to amend, it found that the deliberate-indifference hiring claim was strong enough to survive a motion to dismiss." *Dkt. No. 57*, at 20. This conclusion is based on a flawed assumption - that the Court *had* to consider whether the amendment would be futile and, if it determined that it would be, that the Court *had* to deny leave to amend. This is simply not so.

"The trial court has 'extensive discretion' in deciding whether to grant leave to amend ... A trial court *may choose* not to allow a party to amend 'when the amendment would prejudice the defendant, follows undue delays or is futile.'" *Atlanta Indep. Sch. Sys. v. S.F. ex rel. M.F.*, 740 F. Supp. 2d 1335, 1343 (N.D. Ga. 2010)(emphasis supplied). "If the amendment is futile the trial court *can in its discretion* deny the motion to amend the complaint..." *Domantay v. U.S. Dep't of Navy,* 785 F. Supp. 974, 975 (M.D. Fla. 1992)(emphasis supplied); *see also Parekh v. CBS Corp.,* No. 618CV466ORL40TBS, 2019 WL 2744552, at *2 (M.D. Fla. July 1, 2019)("The district court enjoys 'extensive discretion' in deciding whether to grant a plaintiff leave to amend when the amendment would be futile.")."However, while the [c]ourt *may* deny a motion to amend for futility, it is not required to do so." *Reynolds v. Serv. Corp. Int'l*, No. 5:19-CV-115 (MTT), 2019 WL 2494573, at *2 (M.D. Ga. June 13, 2019)(emphasis original)(*citing Coventry*

13

*First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010)).”[D]enying leave for futility is permissive, not mandatory.” *Chandler v. Phoenix Servs. LLC*, No. 7:19-CV-00014-O, 2019 WL 7859567, at *1 (N.D. Tex. July 22, 2019).

In this case, the Court granted leave to amend from the bench, stating “I am going to grant that motion and find under Rule 16(b)(4) good cause for the amendment.” *Dkt. No. 52.* In addition, the Court's ruling on Plaintiff's motion for leave to amend is memorialized in a minute entry which simply reads, “[a]s to the motion to amend at Dkt. 22 - this motion is granted.” *Dkt. No. 43.* At the same hearing, the Court also ruled that the Defendants' motion for judgment on the pleadings was rendered moot as a result of the Court's granting the Plaintiff's motion for leave to amend. The Court stated, “I find then that the motion at Docket 23, the motion for judgment on the pleadings of the complaint, as it now stands, is mooted and the defendant will not in any way or the defendants will not in any way be penalized from reasserting those arguments along with any other that come up based on the amended complaint at that time in the future.” *Dkt. No. 52.* Referencing the motion for judgment on the pleadings, the Court then explained that the Defendants would be permitted to “reurge it,” and could “modify it in the future once you see that complaint that is filed.” *Id.*

There is no indication in the Court's ruling from the bench or the minute entry that the Court reached the question of futility, much less that it affirmatively decided that the proposed amendment was not futile. To the contrary, it appears that the Court anticipated that the Defendants would re-assert their argument as to the futility of the added claim at the motion to dismiss or motion for judgment on the pleadings phase. Courts routinely allow amended pleadings to go forward and expressly reserve ruling on a defendant's futility argument until the

14

motion to dismiss is filed. *See Romero v. Newmar Corp,* No. 210CV576FTM29DNF, 2011 WL 13295061, at *1 (M.D. Fla. May 10, 2011)("[T]he Court finds good cause to allow the Plaintiff to file a Second Amended Complaint. The determination of whether the new claim is futile is best left to a motion to dismiss."); *Kapral v. GEICO Indem. Co.*, No. 8:13-CV-2967-T-36EAJ, 2015 WL 12838320, at *2 (M.D. Fla. Mar. 3, 2015)("The remaining arguments Defendant makes regarding the futility of this claim are more appropriately addressed at such time as the new claim and new party have been added and then, if and only if, a motion to dismiss is filed."). In short, by exercising its discretion in granting leave to amend the complaint, the Court did not restrict its ability to now determine that the Plaintiff's federal negligent hiring/retention claim is barred for the reasons stated in Defendants' motion to dismiss.[1]

### Conclusion

For the reasons stated above, Defendants respectfully request that this Court grant Defendants' motion to dismiss.

---

[1] Defendants reiterate that Plaintiff's federal negligent hiring/retention claim is necessarily derivative and can only survive to the extent that an underlying constitutional claim can survive. Plaintiff does not dispute this fact. As discussed above, Plaintiff's First and Fourth Amendment claims are barred and, therefore, this derivative claim similarly fails. *See Anderson v. Dunbar Armored, Inc*., 678 F.Supp.2d 1280, 1329 (N.D. Ga. 2009) (holding that with dismissal of underlying claims, plaintiff's negligent hiring and retention claim must also fail); *Morris v. Bouchard*, No. 1:06–CV–2535–GGB, 2007 WL 1100465, *9 (N.D. Ga. Apr. 7, 2007) ("Although Defendant has not yet had an opportunity to move for dismissal of this claim, given the Court's findings with respect to Plaintiff's claim of negligence per se, his negligent retention claim must also be dismissed for want of an underlying tort."); *Tomczyk v. Jocks & Jills Restaurants, LLC*, 198 Fed.Appx. 804, 815 (11th Cir.2006)(finding that jury did not have the option of finding in favor of the plaintiff with respect to a negligent retention claim under Georgia law where the jury found in favor of the defendant with respect to the underlying tort).

This 5th day of November, 2021.

                                             BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP

*/s/Bradley J. Watkins*
Bradley J. Watkins
Georgia Bar No. 740299
bwatkins@brbcsw.com


*/s/Amanda L. Szokoly*
Amanda L. Szokoly
Georgia Bar No. 403412
aszokoly@brbcsw.com

*Attorneys for Defendants*

16

CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 5th day of November, 2021.

/s/ Brad Watkins
Bradley J. Watkins
Georgia Bar Number: 740299
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX

*Attorney for Defendants*